MOORE *v.* WINN-DIXIE STORES, INC., et al.

No. 43458 April 5, 1965 173 So. 2d 603

*Walter L. Nixon, Jr.,* Biloxi, for appellant.

*P. D. Greaves, J. C. Seaman, Jr.,* Gulfport, for appellees.

Rodgers, J.

This is an appeal by the plaintiff in the Circuit Court of Harrison County, Mississippi, from an order and

judgment in the trial court sustaining the motion of appellees for a judgment notwithstanding the verdict of the jury in favor of appellant in the sum of $17,500. The suit involves a claim of appellant, Mrs. Lucille Moore, against Winn-Dixie Stores, Inc. and Lewis B. Rawls, Manager of the Biloxi Stores, for damages because of a personal injury sustained when she stepped on a banana peel in the aisle of the store while she was a customer.

The accident occurred on February 20, 1963, and although there is some dispute as to the exact time the accident occurred, the testimony of appellant indicates she entered appellee's store about 10 A. M. Mr. John Moore, her husband, was with her. They proceeded to make a selection of purchases, going from one aisle to another, and they became separated. Mrs. Moore, the mother of seven children, went to a place in the store where baby food was kept for the purpose of making a selection. She reached for a can of food and slipped on a banana peel which was on the floor. She struck her side on a shelf as she went down and fell flat on her back. All of the canned baby food fell on top of her. She said: ''Well, my feet went out from under me and as I fell my right side hit the shelf.'' She then said: ''Well, after they picked me up and put me in the chair, Mr. Rawls and my husband, after I saw what it was then, it was a banana peeling. I didn't know what it was. They put me in the chair, and the other lady who was wiping my face with a wet towel, said 'Mr. Rawls, there's some grape seed down here.' It was mashed like a hundred horses had went across it. I said 'You better get this up before someone else falls.' And he did, I can't remember whether he did, I was almost out, but somebody else did, they cleaned it all up with a towel, they didn't get a mop. The banana peeling and all was mashed like horses had been running across it.'' She testified at another time describing the

area in the aisle where she fell: "Yes, sir, the whole area, I would say four or five feet, it was all over the floor. I can't say how it was there. All I can say is that it was mashed like it had been here a long, long time." Both Mr. and Mrs. Moore testified that the banana peel was black in color, and Mr. Moore testified: "Yes, there was a little place around there that looked like it was kinda black looking and soiled up, you know." He also said: "It was black looking. And the banana peeling, looked like one piece was laying this way, and one this way. I don't know, it must have been there a little while, I don't know how long." He continued by testifying: "It was mashed up there, where she slipped on it."

When plaintiff, appellant here, had concluded the introduction of evidence and had rested her case, the defendants, appellees here, made a motion *ore tenus* asking the court for a directed verdict in their favor, based upon the assertion that plaintiff had not shown that defendants had knowledge of the dangerous condition of the floor, or had put the banana peel upon the floor. The court overruled the motion upon the ground that the evidence established a question of fact for the determination of the jury. The appellees then offered evidence in defense of the action.

The witnesses for appellees admitted the appellant fell and there was a banana peel at the place where she fell, but it is contended by appellees that the peel was not put there by an employee of Winn-Dixie Stores, and that the store was inspected by Mr. Rawls after it had been cleaned by a janitor at eight o'clock. Later Mr. Rawls and his supervisor, Mr. George Lamb, went over the store together. Both of these men testified there was no banana peel in the area where Mrs. Moore fell at that time. Both witnesses saw the banana peel after the accident, and Mr. Rawls testified: "I assume the lady slipped on the banana peel, but the banana peel

stayed as it was." He testified he knew exactly how the banana peel got there, and said: "I know exactly. About five minutes before Mr. and Mrs. Moore came in, which I know them good as customers, they have traded with me for a long time, a lady and her little boy came in the store. He was about two and a half years old, sitting up in the carriage where you ride the babies." He was then interrupted with the question: "Wait a minute, Mr. Rawls. Let me ask you this. Did you see anybody put the banana peel on the floor, or fall from anybody's hand on to the floor?" He answered: "The banana peel, no sir."

Dr. Tisdale testified that the natural deformity of appellant's backbone was severely damaged and that she suffered considerable pain and was required to take codeine and aspirin for relief. He also said her condition required her to wear a back brace.

The jury, after having heard the evidence, the argument of attorneys and receiving instructions of the court, returned a verdict in favor of appellant. Thereafter, the court entered the judgment above-mentioned. Thereupon, appellees promptly filed a motion for a judgment notwithstanding the verdict, based upon the grounds previously asserted. It was claimed defendants had no notice that the banana peeling was there and it had not been there for a sufficient length of time for appellees to have constructive notice of the soiled and dangerous condition of their floor. The court sustained the motion and set the judgment aside, and entered a judgment in favor of appellees. The question to be determined on appeal is whether or not the court acted properly in setting aside the original judgment.

I

The general rule that the possessor of property is required to make safe the premises on which another is invited or to warn him against hidden danger, is

expressed by Prosser in his work, Handbook of The Law of Torts, 3rd Ed. Section 78 (1955), at page 452, in the following language: ''The leading English case of Indermaur v. Dames (1866 L. R. 1 C. P. 274, 35 L. J. C. P. 184, aff'd L. R. 2 C. P. 311, 36 L. J. C. P. 181) laid down the rule that as to those who enter premises upon business which concerns the occupier, and upon his invitation express or implied, the latter is under an affirmative duty to protect them, not only against dangers of which he knows, but also against those which with reasonable care he might discover. The case has been accepted in all common law jurisdictions, and the invitee, or as he is sometimes called the business visitor, is placed upon a higher footing than a licensee. The typical example, of course, is the customer in a store. . . .'' Continuing his discussion on page 459, the author says: ''The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. He must not only warn the visitor of dangers of which he knows, but must also inspect the premises to discover possible defects. There is no liability, however, for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care. The mere existence of a defect or danger is not enough to establish liability, unless it is shown to be of such a character or of such a duration that the jury may reasonably conclude that due care would have discovered it.''

In a similar case, previously considered by this Court, (Miss. Winn-Dixie Super Markets v. Hughes, 247 Miss. 575, 156 So. 2d 734, 1963), it was said:

''Generally the liability of a proprietor in failing to render the premises reasonably safe, or failing to warn invitees of existing dangers, must be predicated upon the proprietor's superior knowledge concerning

the danger. With respect to the necessity of evidence concerning notice of the dangerous floor condition, 'there are two rules of fundamental significance. The first of these is that where the floor condition is one which is traceable to the proprietor's own act — that is, a condition created by him or under his authority — or is a condition in connection with which the proprietor is shown to have taken action, no proof of notice is necessary.

. . . . . .

"The second rule, in contrast with that applicable to a floor condition resulting from the act of the proprietor, is this:

'* * * where it appears that a floor in a store or similar place of business has been made dangerous by litter or debris present thereon, and that the presence of the litter or debris is traceable to persons for whom the proprietor is not responsible, proof that the proprietor was negligent in relation to the floor condition requires a showing that he had actual notice thereof, or that the condition existed for such a length of time that, in the exercise of reasonable care, he should have known of it.' . . .

"In both types of cases, negligence of the defendant and notice to him may be found for circumstantial evidence of adequate probative value. . . .''

In the case of Williamson v. F. W. Woolworth Company, 237 Miss. 141, 112 So. 2d 529 (1959), this Court cited many cases from other states involving the question of negligence growing out of injuries to customers, invitees, because of slipping on various substances which had accumulated on the store floor. We quoted from Louie v. Hagstrom's Food Stores, 81 Cal. App. 2d 601, 184 P. 2d 708, 712, as follows:

"The true rule is that, while plaintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been

discovered and remedied, that fact, like other facts, may be proved by circumstantial as well as by direct evidence. It is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it.

". . . Matthews v. Thompson, 231 Miss. 258, 95 So. 2d 438 . . ."

 █ In the case of Patterson v. Sayers, 223 Miss. 444, 78 So. 2d 467 (1955), this Court pointed out that the settled rule in this State requires the operator of premises to exercise reasonable diligence to keep such premises in a reasonably safe condition for the use of an invitee, and we said:

"It is an undisputed fact that Mrs. Patterson did slip and fall on the lobby floor. It is also a fact that she fell because she slipped on that floor. It is undisputed, as the record now stands, that she fell because of the condition of the floor. She and others testified that the place where she slipped was of a different color from the adjacent floor. That place was dark. It covered some three to four feet. The heel of her shoe cut a groove into whatever substance was on the floor. Certainly the jury could have found that there was some kind of substance on the floor which caused her to fall. The jury could also have concluded that those who worked-over the floors had no special training in that work and that often the floors were not properly waxed and buffed."

 █ This case points up that the questions of fact should be left to the determination of the jury as to the condition of the floor and surrounding circumstances similar to the case now before the Court.

In the case of Seymour v. Gulf Coast Buick, Inc., 246 Miss. 805, 152 So. 2d 706 (1963), where the plaintiff

slipped on grease on the floor in defendant's garage, we said:

"We believe that conflicting testimony is a question for the jury to determine.

"It must be accepted as proof that the appellant was at a place where he had a right to be; that while he was aware of the existence of the pit, there were no safeguards around it to prevent him from falling; that the proximate cause of his slipping and falling was an accumulation of grease or oil on the floor of the garage near the pit; that oil and grease had to be cleaned from the floor daily by a porter; and it is a fair inference to draw from the testimony that on the morning of the accident he missed or over looked the patch of oil or grease in which the appellant stepped, slipped, fell, and was seriously injured."

In the instant case, the janitor was no longer employed by appellees at the time of the trial, and his testimony as to whether or not he cleaned the aisle involved herein was not given to the jury. The Superintendent, Mr. George Lamb, testified that as they made the rounds to inspect the store: "We take anywhere from fifteen minutes to an hour, usually somewhere in that neighborhood, and make notes on things to do and cover the whole thing."

From the foregoing testimony, and in the light of opinions heretofore decided by this Court, it is apparent the jury could have reasonably concluded that the janitor did not properly clean the floor of appellees' store and that the employees did not see the soiled spot on the floor near the baby food at a time when they were "taking notes on things to do."

## II

We believe this Court has heretofore laid down certain rules which, if followed, would assist the trial courts in determining whether or not a peremptory instruction should be granted in most instances.

■■ ■ In the case of Elias v. New Laurel Radio Station, Inc., 245 Miss. 170, 146 So. 2d 558 (1963), this Court said:

"In considering the motion for a peremptory instruction 'everything must be considered as proved which evidence established, either directly or by reasonably inference, against party requesting peremptory instruction.' "

(Hns. 6-8) In the case of Johnston v. Canton Flying Services, Inc., 209 Miss. 226, 46 So. 2d 533 (1950), we said at p. 535:

"In determining whether there was sufficient evidence on the question of defendant's negligence for decision of that issue by a jury two well established principles should be kept in mind. One is that negligence may be established by circumstantial evidence in the absence of testimony by eyewitnesses provided the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inference, and further in this connection that the causal connection between an agency and the injury sustained need not be shown by direct evidence. . . .

"The other principle is that in determining the question whether defendant is entitled to a directed verdict, the evidence must be treated as proving every fact favorable to plaintiff's case which is established. either directly or by reasonable inference."

In the case of Hawkins v. Hillman, 245 Miss. 385, 149 So. 2d 17 (1963), we said:

"This Court has held in a long line of cases that, in determining whether the defendant is entitled to a directed verdict, the evidence must be treated as proving every fact favorable to the plaintiff's case which is established either directly or by reasonable inference."

### III

The appellees have cited several cases from other states in which appellate courts have held that the foreign substance, found on the floor after the accident, is not sufficient as a matter of law to show that it had been on the floor long enough for the personnel of the store, in the exercise of reasonable care to discover it.

Zerbe v. City of Springfield, 38 Ohio L. Abs. 487, 60 N. E. 2d 793 (1943), is a typical example of these cases. In that case, where the plaintiff and her daughter testified that the banana skin was black, and therefore old, and flattened out as though somebody had stepped on it and had grime on the floor embedded in it, the Court stated: "It is our conclusion that there is absolute absence of evidence supporting the claim that the banana peel was on the floor a sufficient length of time to constitute constructive notice to the defendant."

We are of the opinion, however, these cases are not controlling in the case at bar because there is more evidence here than a mere description of the color of the banana peel. In the instant case, the aisle was soiled around the place where the appellee fell, and the explanation made by the store manager that a baby in a grocery cart might have been eating grapes and dropped the seeds or a banana peel might not have been acceptable to the jury. The inspection made while "writing things down to do" could easily have led the jury to believe from the circumstances that the janitor did not clean up properly and that the store inspectors overlooked the banana peel and the grape seed. The evidence shows beyond question that the peel was there, the appellant slipped on it, and was injured. Therefore, taking all of the testimony and inferences to be drawn therefrom, we are of the opinion that the issue of negligence was a question of fact for the determination of the jury as to whether or not the banana peel had been on the floor a sufficient length of time to charge the

appellees as reasonable and prudent operators of the store with notice of the danger.

In the case of Ladner v. Artigues, 234 Miss. 292, 106 So. 2d 139 (1958), we pointed out that ''The evidence was conflicting and being in dispute, the issue was properly submitted to the jury, and having been resolved by the jury, we are of the opinion that the court should not have sustained the motion for judgment non obstante veredicto.''

In the instant case, we are of the opinion that the trial court properly submitted the issue of negligence to the jury, and the jury having returned a verdict in favor of appellant, which was incorporated in the judgment of the court, we are of the opinion that the trial court erroneously set the original judgment aside and entered a judgment in favor of appellees.

The judgment setting aside the previous judgment in favor of appellees is hereby reversed, and the original judgment in favor of appellant is reinstated, and a judgment in favor of appellant against appellees in the sum of $17,500, (the original amount fixed by the verdict of the jury), will be entered in this Court, together with six percent interest from the date of the original judgment.

Judgment reversed and former judgment reinstated in this Court.

*Lee, C. J., and Gillespie, Jones and Brady, JJ.,* concur.