# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00097-SCT

*BOBBIE GAINES*

*v.*

*K-MART CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/9/1999 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS JONES |
| | CHARLES RAYMOND WARD, JR. |
| ATTORNEYS FOR APPELLEE: | H. GRAY LAIRD, III |
| | JAMES D. HOLLAND |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL - 12/11/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     In this premises liability case a customer was injured when she fell from a stepladder in a K-Mart store while trying to retrieve a displayed item.  The jury found the customer 95% at fault but assessed her damages at a fraction of the uncontradicted past and future medical expenses.  After the trial court granted an additur, the customer appeals contending that the jury's apportionment of fault was against the weight of the evidence and that the trial court abused its discretion in excluding testimony about and photographs

of other stepladders at the store. K-Mart also cross-appeals arguing that the trial court erred in granting an additur. Finding no reversible error by the trial court, we affirm its post-additur judgment.

## FACTS AND PROCEEDINGS BELOW

¶2. On December 14, 1994, Bobbie Gaines (Gaines) and her sister went to the Super K-Mart department store (K-Mart) in Jackson, Mississippi to do some Christmas shopping. While in the store, Gaines spotted a popcorn tin located on the top shelf in the holiday display section. A six-foot stepladder was located next to the shelf. When Gaines climbed the ladder to retrieve the popcorn tin, she fell, sustaining injuries to her head and lower back. Melvin Jones, a K-Mart employee in loss prevention, filed an accident report, and an ambulance was called to assist Gaines. Gaines was taken to St. Dominic's Hospital in Jackson where she was treated and released a few hours later.

¶3. Later that same day Gaines went to several emergency rooms in Neshoba County and Leake County complaining of back pain and headaches. Each time she was given pain medication and released. After experiencing persistent incontinence, chronic back pain and migraine headaches, Gaines was examined by several specialists, including a psychologist who opined that Gaines may have been malingering as to the extent of her pain. At the time of trial, Gaines's medical bills approached $83,000. In addition, Gaines learned that she would have to wear a catheter the rest of her life.

¶4. Gaines brought suit in the Circuit Court of the First Judicial District of Hinds County alleging that K-Mart was negligent in placing the ladder where a customer could use it. The jury returned a verdict in favor of Gaines assessing her damages as $10,000, but found that Gaines was 95% at fault. The jury then reduced the award to $500. The trial judge granted an additur of $20,491, based upon an expert's estimate that Gaines's present and future medical expenses would total approximately $610,000. The

additur raised the award to approximately 5% of $610,000. K-Mart did not accept the additur, and both parties appealed.

## DISCUSSION

## I.

## WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶5.    Gaines argues that the jury verdict was against the overwhelming weight of the evidence in that K-Mart's negligence was substantially greater than the 5% assessed by the jury. In support of this position Gaines cites *Moore v. Winn-Dixie Stores Inc.,* 252 Miss. 693, 173 So.2d 603 (1965). In *Moore* this Court held that a property owner owes an invitee the duty to use reasonable care to keep its store in a reasonably safe condition for the protection of its invitees, or the owner owes an invitee the duty to warn of any dangerous conditions not readily apparent which the owner knew, or should have known, in the exercise of reasonable care and the duty to conduct reasonable inspections to discover dangerous conditions existing on the premises. *Id.* Therefore, Gaines submits that K-Mart owed its customers the following duties:

(1)    A duty to use reasonable and ordinary care to keep its store reasonably safe for the protection of its customers; or

(2)    A duty to warn its customers of any dangerous conditions not readily apparent existing in the store which K-Mart knew or should have known in the exercise of reasonable care; and

(3)    A duty to conduct reasonable inspections to discover and correct dangerous conditions existing in the store.

3

¶6.     Gaines posits that K-Mart breached its duty to her by placing unsafe ladders on the sales floor which it knew, or should have known, were being used by customers. Gaines further posits that K-Mart knew that its customers were using these ladders and despite a store policy which prohibited such use, K-Mart failed to remove them or warn Gaines of their condition. Gaines argues that she provided the jury with unrefuted evidence that she suffered injuries due to her fall from the defective ladder in K-Mart's store. Gaines argues further that it is undisputed that her injuries resulted in severe urological damage.

¶7.     K-Mart counters that this Court has consistently held that if reasonable men might have a difference of opinion as to whether the negligence of a party constitutes a substantial factor in bringing about the injury, the question of negligence is for the jury, and that all questions of negligence and contributory negligence are for the jury with proper instructions from the trial court. *Caruso v. Picayune Pizza Hut, Inc.,* 598 So.2d 770, 772 (Miss. 1992); *Smith v. Walton,* 271 So.2d 409, 410 (Miss. 1973). K-Mart submits that the jury in the instant case was properly instructed in the law and properly rendered a verdict apportioning fault between the two parties.

¶8.     K-Mart agrees that under Mississippi law the owner or operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition and, if the operator is aware of the dangerous condition which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition. *Jerry Lee's Grocery, Inc. v. Thompson,* 528 So.2d 293, 295 (Miss. 1988). K-Mart submits, however, that an invitee is still required to use that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance. *Fulton v. Robinson Indus., Inc.,* 664 So.2d 170, 175 (Miss. 1995). It is undisputed that Gaines failed to ask for assistance from one of K-Mart's employees before climbing the stepladder to retrieve the

popcorn tin from the top shelf. K-Mart submits that this was sufficient to establish that Gaines's injuries were the result of her own carelessness.

¶9.     Gaines counters that at the time of her injuries, the ladder was already on the sales floor in a dangerous condition so as to be used by K-Mart customers. Gaines points to the absence of conflicting testimony establishing that warnings were posted. Gaines also points to the testimony of a former K-Mart employee, Melvin Jones, who investigated the accident after it happened. Jones testified that the ladder appeared to be "ramshack" and unstable. He also testified that some screws in the middle steps appeared to be loose. Gaines submits that since this was the only testimony submitted concerning the condition of the ladder, any objective assessment by the jury should have led to the conclusion that the K-Mart ladder was not reasonably safe for K-Mart customers to use.

¶10.     K-Mart counters that there was conflicting evidence presented as to the condition of the ladder. K-Mart points out that upon cross-examination, Jones admitted that the ladder was not broken or cracked and if such was the case, he would have noted it on the accident report which he prepared. K-Mart submits further that the jury was not required to believe the testimony of Melvin Jones. Finally, K-Mart argues that the jury viewed three photographs of the scene of the accident which showed the ladder involved and could reach its own conclusion as to the ladder's condition.

¶11.     K-Mart cites *Andrew Jackson Life Ins. Co. v. Williams,* 566 So.2d 1172 (Miss. 1990), in which this Court held that the jury is in the best position to evaluate and weigh the truthfulness of each witness's testimony. *Id.* at 1177. "The demeanor or bearing, the tone of voice, the attitude and appearance of the witnesses, all are primarily for inspection and review by the jury. The jury not only has the right and duty to determine the truth or falsity of the witness, but also has the right to evaluate and

5

determine what portions of the testimony of any witness it will accept or reject." *Id.*, (quoting *Travelers Indem. Co. v. Rawson,* 222 So.2d 131, 134 (Miss. 1969)).

¶12.    The jury heard testimony from both sides and was in the best position to determine which version of events was more credible. As stated above, the jury has the right to evaluate and determine what portions of the testimony of any witness to accept or reject. In the instant case, the jury heard the testimony of Gaines and Jones as to the condition of the ladder. The jury also saw pictures of the accident scene with the ladder in question lying on the floor beside Gaines. Finally, the jury heard testimony from Gaines's doctor and that of an expert witness who presented estimates of Gaines's future medical expenses.

¶13.    As disparate as the verdict may seem as it relates to the degree of fault accorded the parties, it is not this Court's place to substitute its judgment for that of a lawfully impaneled jury. Only when the verdict evinces bias, passion or prejudice will a reviewing court have cause to overturn. *McIntosh v. Deas,* 501 So.2d 367, 369 (Miss. 1987). There is insufficient evidence to establish that such is the case here. It was certainly reasonable for the jury to have expected that a customer would not attempt to retrieve an item from the top shelf of a department store without the assistance of an employee. Furthermore, it was certainly reasonable for the jury to have found that Gaines's own negligence significantly contributed to her injuries, and thereby apportion fault as it did. In light of the evidence presented, these findings do not shock the conscience, nor rise to the level of evidencing bias, passion or prejudice. Accordingly, Gaines's point of error is without merit. The jury's verdict as to the apportionment of fault should be upheld.

## II.

**WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING TESTIMONY AND PHOTOGRAPHS OF ALLEGEDLY DEFECTIVE LADDERS.**

### a.

6

¶14.     Gaines next argues that the trial judge erred in excluding the testimony of the former K-Mart employee, Melvin Jones, regarding other ladders situated on K-Mart's sales floor. Gaines submits that Jones's testimony would have established that K-Mart allowed faulty, defective or damaged ladders returned by customers to be placed on the sales floor. Gaines cites Rule 406 of the Mississippi Rules of Evidence. It states, "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion is in conformity with the habit or routine practice." M.R.E. 406.

¶15.     The line of questioning at issue went as follows:

> Q:      Would these – well you've already said these types of ladders
>             were available for sale to the public?
> A:      Yes sir.
> Q:      Were these ladders ever returned by customers?
> A:      Yes.
> Q:      What are some of the reasons why these ladders would have been
>             returned?
> BY MR. HOLLAND:  Your Honor, I would object to the relevance of
>             this. That returning other ladders does not relate to this
>             particular ladder.
> BY THE COURT:      Where are you going with this, counsel?
> BY MR. WARD:  To show that there are other problems with ladders,
>         your Honor.
> BY THE COURT:      The Court is going to sustain the objection.

¶16.     Gaines posits that had the court allowed this line of questioning to continue, the jury would have been given the relevant information that K-Mart routinely and customarily placed defective ladders on the sales floor. Moreover, Gaines submits that the jury would have come to the conclusion that the ladder involved in Gaines's accident was indeed defective.

¶17.     K-Mart submits that Gaines's argument is nothing more than an attempt to stack several inferences

upon each other in an effort to disguise pure speculation. K-Mart cites Rule 403 of the Mississippi Rules of Evidence which states in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403. K-Mart submits that there was no issue at trial as to how the ladder involved in the accident got on the sales floor. K-Mart further submits that Gaines failed to present evidence that the ladder involved had been returned by a customer or had been returned in a defective condition. K-Mart urges that the admission of evidence concerning other ladders would have only encouraged the jury to speculate that this ladder was within a group of other ladders returned by customers and that such speculation would only detract from the jury's evaluation of the direct evidence in the case. We agree.

¶18.    This Court has stated that the admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. ***Barrett v. Parker,*** 757 So.2d 182, 183 (Miss. 2000). Moreover, this Court has held that for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party. ***Hansen v. State,*** 592 So.2d 114, 115 (Miss. 1991).

¶19.    Although Rule 406 allows the admission of evidence tending to establish a business's routine, habit or practice, Rule 403 prohibits the use of any evidence that substantially confuses the issues. At trial, Gaines, through the testimony of Melvin Jones, sought to establish that K-Mart routinely left defective ladders on its sales floor. If Gaines had simply sought to establish that K-Mart routinely left ladders on its sales floor, then testimony regarding this practice may have been admitted, if relevant. The conflict arises because the jury is left to speculate about the inferences Jones's testimony raises: (1) that the ladder involved in the instant case was defective, and (2) that K-Mart knew of the ladder's dangerous condition.

8

Such inferences muddy the issues and confuse the jury. Accordingly Gaines's argument is without merit. The trial judge did not err in excluding the proposed testimony of Melvin Jones concerning the condition of other ladders in the store.

**b.**

¶20. Gaines next argues that the trial court erred in excluding photographs of other ladders on the basis that the actual photographer had not identified the photographs. While Gaines is correct that the trial judge should not have excluded the photographs on that basis, *See Wells v. State,* 604 So.2d 271, 277 (Miss. 1992) (citing *Jackson v. State,* 483 So.2d 1353 (Miss. 1986)), the photographs were still inadmissible for the same reasons addressed in the preceding section; such evidence confuses the issues as the photographs do not address whether the ladder involved in Gaines's accident was defective. Accordingly, Gaines's argument is without merit.

**III.**

**WHETHER THE TRIAL COURT ERRONEOUSLY GRANTED AN ADDITUR TO THE JURY'S AWARD.**

¶21. K-Mart submits in its cross-appeal that the trial court's decision to grant an additur to the jury award was erroneous and should be reversed. In reviewing a trial court's grant of an additur, this Court's standard of review is limited to an abuse of discretion. *Maddox v. Muirhead,* 738 So.2d 742, 743 (Miss. 1999) (citing *Rodgers v. Pascagoula Pub. Sch. Dist.,* 611 So.2d 942, 945 (Miss. 1992)). The party seeking the additur bears the burden of proving his injuries, loss of income, and other damages. This Court views the evidence in the light most favorable to the defendant, giving him all favorable inferences that may reasonably be drawn therefrom. *Rodgers,* 611 So.2d at 945.

¶22. Miss. Code Ann § 11-1-55 (Rev. 2002) provides:

The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

¶23.    K-Mart first argues that § 11-1-55 requires that one of two conditions exist prior to an order granting an additur.  K-Mart cites *McIntosh v. Deas,* 501 So.2d 367 (Miss. 1987). In *McIntosh* this Court held that before the trial judge may usurp the jury's function in setting a damage award, he must comply with the language of the statute and find either: (1) that the jury's verdict is so shocking to the conscience that it evinces bias, passion and prejudice on the part of the jury; or (2) that the verdict was contrary to the overwhelming weight of the credible evidence. *Id.* at 370.

¶24.    K-Mart argues that the trial court's order in the instant case failed to comply with either of these requirements.  In further support of this position, K-Mart cites *Gibbs v. Banks,* 527 So.2d 658 (Miss. 1988).  In *Gibbs* this Court held that an implicit finding of an inadequate award does not suffice to meet the requirements of § 11-1-55. *Id.* at 660.

¶25.    It would have been helpful if the trial judge in the instant case made an explicit finding that the damages awarded were against the overwhelming weight of the evidence.

However, we find that the affirmative statement made by the trial judge is more than implicit.  The trial court's order provides in pertinent part:

The court finds that the jury's verdict indicated that Plaintiff was 95% negligent in causing $609,832.91, of Plaintiff's reasonable and necessary medical expenses and/or other damages asserted by Plaintiff at trial.  The jury verdict nonetheless awarded Plaintiff only $10,000 damages, which is less than the calculation of 5% of the reasonable and

10

necessary medical expenses and damages substantiated by Plaintiff at trial. Moreover, the jury's award is not consistent with the 5% damage assessment. Accordingly, the court is of the opinion that an additur which reflects 5% of the reasonable and necessary medical expenses or total damages asserted by the Plaintiff at trial is appropriate.

¶26.    Hence, we find that it is reasonable to conclude from the aforementioned order, that the trial court found that the damage award by the jury was inadequate because it was against the overwhelming weight of credible evidence.

¶27.    Gaines counters that the trial judge noted in her order that, "the jury's verdict indicated that the Plaintiff was 95% negligent in causing $609,832.91 of the Plaintiff's reasonable and necessary medical expenses and/or other damages asserted by Plaintiff at trial. The jury verdict nonetheless awarded Plaintiff only $10,000 damages, which is less than the calculation of 5% of the reasonable and necessary medical expenses substantiated by plaintiff at trial. Moreover, the jury's award is not consistent with the 5% damage assessment."

¶28.    Gaines submits that since the trial judge obviously believed that the jury's verdict was contrary to the overwhelming weight of credible evidence, her subsequent additur was in accordance with §11-1-55. Gaines especially notes the trial judge's remark concerning the damages that were substantiated at trial. Gaines concludes that to disregard the trial judge's finding simply because she failed to add a statement that the jury's verdict was contrary to the overwhelming weight of credible evidence, would serve only to punish Gaines for what is at most a judicial misstep.

¶29.    The jury award went against the overwhelming weight of the evidence. It is hard to imagine, after reviewing the record in this case, how the jury could come have come up with such a paltry amount. Gaines's medical expenses at the point of trial had already approximated $83,000. Even if the jury believed that Gaines was malingering as to the extent of her back pain, the fact remains that she has to wear a

catheter for the rest of her life. It was not an abuse of discretion for the trial judge to have given credence to the expert testimony presented by Gaines regarding her medical expenses. Furthermore, the trial court left intact the jury's apportionment of fault.

¶30. Although the order granting the additur failed to meet the technical requirements of §11-1-55, the statute allows the reviewing court to make the specific findings if it deems such necessary. Accordingly, we hold that the jury's verdict went against the overwhelming weight of the evidence and that the trial court's additur was an appropriate amount in keeping with the proportion of the allocated fault.

## CONCLUSION

¶31. For these reasons, we affirm the trial court's post-additur judgment.

¶32. **AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶33. I agree with the majority that the trial court's grant of an additur was not in error. Nevertheless, I believe that the display of bias by the jury is so evident as to warrant reversal as to the apportionment of liability. Therefore, I respectfully dissent.

¶34. As it pertains to liability, the majority noted that a reviewing court may have cause to overturn when a jury's verdict evinces bias, passion or prejudice. *See **McIntosh v. Deas***, 501 So.2d 367, 369 (Miss. 1987). Subsequently, the majority found that there was insufficient evidence to show bias enough to warrant such action here.

¶35. However, in its discussion of the propriety of the grant of an additur in this matter, the majority finds

12

that the jury award was against the overwhelming weight of the evidence in this case. The jury found only $10,000 in damages and that the plaintiff was only entitled to $500 of that amount since the defendant was only 5% liable. However, the trial court found the plaintiff proved present and future medical expenses of around $610,000, and thus it granted the additur to reflect 5% of that amount.

¶36. Therefore, despite finding that the defendant was 5% responsible for around $610,000 worth of damages, the jury awarded only .082% of that amount. Such an award shocks the conscience. It certainly shocked the conscience of the trial court, which took steps to correct the award, described by the majority as "paltry." However, the jury's award speaks volumes as to the frame of mind of this jury.

¶37. As the majority noted, a psychologist testified that the plaintiff *may have been* malingering. Such a general statement was sufficient to inflame the jury and perhaps caused this evident bias and passion that warrants the reversal of that verdict. Accordingly, I would reverse the judgment and remand this case for a new trial. Therefore, I respectfully dissent.