KITCHENS, Justice,
dissenting:
¶ 19. I respectfully disagree with the majority’s conclusion that no genuine issue of material fact existed regarding whether Imperial Palace knew or should have known of a misaligned concrete parking bumper alleged to have caused injury to Joseph Jones. Additionally, a genuine issue of material fact existed with respect to whether reasonable inspections of the premises would have revealed the danger.
*323 ¶ 20. The majority opines that, “in the case before us today, the plaintiff produced no evidence that Imperial knew or had reason to know that the particular bumper that caused Jones’s injury was misaligned at the time of the injury.” In support of that assertion, the majority attempts to distinguish the case of Drennan v. Kroger Co., 672 So.2d 1168, 1172 (Miss.1996): Drennan “stands for the proposition that certain known facts — in that case a known leaky roof over the exact puddle in question, together with heavy rain, put Kroger on sufficient constructive notice, that a particular dangerous condition was likely to be present.” But the present case and Drennan, in which this Court reversed the trial court’s grant of a directed verdict to Kroger, are strikingly similar. Id. at 1178.
¶21. The majority’s attempt to distinguish Drennan from the present case on the basis that it involved “a known leaky roof over the exact puddle in question, together with heavy rain,” fails. The store manager in that case “maintained that he was not aware of any leaks in the roof in the area that Drennan fell, nor had he observed any water stains above that area.” Id. at 1170. He further stated that “[djuring his two years at the store, he was aware of only two leaks, one above the courtesy booth and another above the frozen foods several aisles away from where Drennan fell.” Id. The assistant manager of engineering for Kroger testified that “none of the reported problems concerned the area over aisle four,” where Drennan sustained the fall in question. Id. Dren-nan did, however, produce “a photograph of water stains in the ceiling tiles directly above aisle four.” Id. at 1172. According to this Court, that photograph, coupled with testimony that “the roof had required a considerable amount of repairs in the past[,] ... created an inference that the Kroger store should have been aware of the leaks in the roof.” Id.
¶ 22. The majority finds a distinction where none exists, arguing “[t]he ceiling photograph in Drennan identified the cause of the specific hazard that led to the plaintiffs injury in that case. Indeed, the defendant admitted it knew of the leak’s existence and the hazard it caused.” In the present case, as in Drennan, Jones attached to his response to Imperial Palace’s motion for summary judgment an incident report prepared by Imperial Palace at the time of the incident. The report included the following: “STUMBLED ON PARKING CURB, CURB SLIPPED. WASN’T ATTACHED TO FLOOR.” The incident report was accompanied by a photograph which Paul Dillon, an Imperial Palace security investigator at the time, testified was taken immediately following Jones’s fall. According to Dillon, the photograph showed the actual parking bumper over which Jones had stumbled. Jones testified in deposition that the parking bumper was “caddy-whompered” at the time he fell over it. Dillon further testified to his awareness that some bumpers had been misaligned prior to the incident and that such misaligned bumpers could pose a tripping hazard to passersby. In fact, Dillon testified that he had reported this condition to the maintenance facilities department “once upon a time,” because “if [the parking bumper] is way out there, it would be [a potential hazard], yeah.”
¶ 28. Thus, the present case is very like Drennan, where “evidence that the roof was prone to leak during periods of rain” meant that “a juror could easily infer from the evidence that the collection of water on the floor was not completely unexpected....” Id. at 1172. Here, the jury could infer from the evidence presented that Imperial Palace should have been aware of the misaligned bumpers, since their misalignment was to be expected, according to Dillon’s testimony. Moreover, as in Dren- *324 nan, where photographs of water stains on the ceiling of aisle four above the location at which Drennan had slipped and fallen were received into evidence, the photograph of the particular misaligned bumper over which Jones tripped gives rise to an inference that the bumper was misaligned at the time of Jones’s fall. These are questions of fact for the jury to sort out, and were improperly decided as a matter of law at the summary judgment stage. See Miss. Dep’t of Transp. v. Cargile, 847 So.2d 258, 262 (Miss.2003), overruled on other grounds by Little v. Miss. Dep’t of Transp., 129 So.3d 132 (Miss.2013) (“If proof of a causal connection is to be established by circumstantial evidence, it must be sufficient to make the plaintiffs asserted theory reasonably probable, not merely possible, and it is generally for the trier of fact to say whether circumstantial evidence meets this test.”) (citations omitted). The Court of Appeals was therefore correct in holding that a genuine issue of material fact existed regarding whether Imperial Palace knew or should have known of the hazard posed by the misaligned parking bumper.
¶ 24. With respect to the existence of a genuine issue of material fact regarding whether reasonable inspections of the premises by Imperial Palace would have revealed the danger, the majority posits that “[e]ven if Imperial failed to conduct reasonable inspections, there is simply no evidence to conclude that it existed for ‘such duration that the jury may reasonably conclude that due care would have discovered it.’ ” (citing Moore v. Winn-Dixie Stores, Inc., 252 Miss. 693, 173 So.2d 603, 605 (1965)). The majority continues: “the plaintiff has failed to put forth any proof that reasonable inspections would have led to the discovery of the dangerous condition, which could have been created by another customer only minutes prior to the injury.”
¶ 25. The record reflects the following, summarized succinctly by the Court of Appeals and repeated verbatim below:
Imperial Palace’s Rule 30(b)(6) representative established that Imperial Palace: (1) conducted no safety meetings during the time period of June 27, 2005, to September 2006; (2) had no safety or risk-management procedures or handbook at the time of Jones’s accident; (3) had no policies or procedures concerning maintenance or repairs of the misaligned parking bumpers; and (4) failed to inspect, make repairs to, or conduct maintenance on the parking bumpers between September 2003 and September 2006.
Jones v. Imperial Palace of Mississippi, LLC, — So.3d —, —, 2013 WL 5469741, *6 (¶31) (Miss.Ct.App. Oct. 1, 2013). In the present case, the Court of Appeals held that “[although the circuit court did not address Imperial Palace’s duty to conduct reasonable inspections, we find that there is a genuine issue of material fact with respect to whether or not Imperial Palace breached its duty to conduct reasonable inspections of its premises.” Id.
¶ 26. In Pigg v. Express Hotel Partners, LLC, the plaintiffs son was injured when a mirror in a Holiday Inn room shattered. Pigg v. Express Hotel Partners, LLC, 991 So.2d 1197, 1199 (Miss. 2008). This Court held that a genuine issue of material fact existed “as to whether Holiday Inn knew or should have known of the loose mirror, and whether it was negligent in inspecting its premises.” Id. at 1200. The Court held that “a jury must be allowed to decide whether Holiday Inn breached its duty to keep the premises reasonably safe and whether its inspections of its rooms was reasonable. ” Id. (emphasis added). Because a determination regarding whether reasonable inspec *325 tions would have revealed the dangerous condition is a question of fact for the jury to decide, the Court of Appeals correctly reversed the trial court’s grant of summary judgment to Imperial Palace.
¶ 27. The majority posits that this analysis “misses the point.” But in Moore v. Winn-Dixie Stores, Inc., a case upon which the majority relies, this Court reversed the grant of a judgment notwithstanding the verdict (JNOV) where the plaintiff suffered injuries after slipping on a banana peel and falling. Moore v. Winn-Dixie Stores, Inc., 173 So.2d 603, 608, 252 Miss. 693 (1965). This Court opined that “the issue of negligence was a question of fact for the determination of the jury as to whether or not the banana peel had been on the floor a sufficient length of time to charge the appellees as reasonable and prudent operators of the store with notice of the danger.” Id. (emphasis added). I agree that inspections may “not have prevented this incident if the hazard was created by another patron an hour before the incident.” But the length of time of the existence of a dangerous condition is, under the longstanding jurisprudence of this Court, a jury question not properly disposed of at the summary judgment stage.
¶28. A genuine issue of material fact exists regarding whether Imperial Palace knew or should have known of a dangerous condition on its premises; a genuine issue of material fact also exists regarding whether reasonable inspections would have led to a discovery of the dangerous condition. I would therefore affirm the Court of Appeals’s reversal of the grant of summary judgment to Imperial Palace.
KING, J., JOINS THIS OPINION.